Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4055 | DATE | 7/14/2000 |
| CASE TITLE | Rhonda Atkins vs. Jad Hosiery, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. JAD's motion to dismiss (Doc. No. 10-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 3 — number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | JUL 17 2000 — date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | 23 |
| | Copy to judge/magistrate judge. | | 7/14/2000 — date mailed notice |
| ETV — courtroom deputy's initials | | Date/time received in central Clerk's Office | ETV — mailing deputy initials |

Document Number: 23

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA ATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99 C 4055 |
| | ) | |
| JAD HOSIERY, INC., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rhonda Atkins ("Atkins") claims she lost her management position with Defendant JAD Hosiery ("JAD") due to her pregnancy. Defendant JAD challenged this court's jurisdiction, arguing that it has too few employees to trigger coverage under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). For the reasons set forth below, JAD's motion to dismiss is granted.

## FACTUAL BACKGROUND[1]

---

[1] When a party challenges the factual basis for jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the party asserting jurisdiction bears the burden of persuading the court that subject matter jurisdiction exists. *See NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). In meeting this burden, the non-movant must prove to the court by a preponderance of the evidence, or proof to a reasonable probability, that jurisdiction exits. *See id.* The court may consider affidavits and other relevant evidence to resolve the factual dispute regarding the court's subject matter jurisdiction. *See Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). In keeping with these standards, on April 11, 2000, this court conducted an evidentiary hearing on the issue of whether JAD is an "employer" for purposes of Title VII. The findings set forth below are based on the uncontested allegations of the complaint, uncontested assertions in JAD's

(continued...)



JAD, a Texas corporation doing business in Illinois, is engaged in the business of marketing and selling "On the Go" brand women's hosiery in the Midwest. (Affidavit of Anthony Smith, JAD's Vice-President ¶ 2-3.) Atkins alleges that JAD hired her in December 1995 as Chicago Manager in December 1995, and that in June 1996 she informed JAD that she was pregnant. (Compl. ¶¶ 6-7.) Atkins alleges that JAD terminated her on January 8, 1997 because of her pregnancy and replaced her with a male employee. (*Id.* ¶ 8.)

JAD was incorporated on September 29, 1995. (Def.'s Mot. to Dismiss, Ex. 1.) Anthony Smith, a JAD-shareholder, has served as Vice-President of JAD since its incorporation. (Tr. 48.) JAD's president is Linda Abramson, a cousin of Anthony Smith. (Tr. 48, 53.) Anthony Smith's father, Edward Smith, owns the "On the Go" trademark and originally distributed that line of women's hosiery through Smith Hosiery, Inc. (Tr. 54.) In 1989, Anthony Smith's father authorized him to distribute On the Go in the southeastern region of the United States. (Tr. 51.) In 1993, Anthony Smith incorporated his distributorship as Smith Hosiery - S.E., Inc., a corporation of which Anthony is the sole shareholder, president, secretary and treasurer. (*Id.*) In 1994, Mitchell Smith, Anthony's brother, purchased the assets of Jaylin Sales Company, a Maryland corporation authorized by Edward Smith to distribute the "On the Go" brand in the northeastern region of the

---

[1](...continued)
standards, on April 11, 2000, this court conducted an evidentiary hearing on the issue of whether JAD is an "employer" for purposes of Title VII. The findings set forth below are based on the uncontested allegations of the complaint, uncontested assertions in JAD's motion to dismiss, and evidence presented at the hearing before the court. The transcript of that hearing is cited as "Tr." followed by the page number.

2

United States, and renamed it as Smith Hosiery - N.E., Inc. (Tr. 52.) Mitchell Smith is the sole shareholder, president, secretary and treasurer of Smith Hosiery - N.E., Inc. (Pl.'s Response, Ex. B.)

In 1996, its first full year of operation, JAD employed three employees; in 1997 JAD employed four employees. (Anthony Smith Aff. ¶¶ 4-5.) Between December 1, 1995 and February 1998 Smith Hosiery, Inc. employed a total of five persons. (JAD's Response to EEOC Questionnaire, at 3.) During that same time period, Smith Hosiery - N.E. employed a total of twelve persons and Smith Hosiery - S.E. employed a total of twenty persons. (*Id.* at 4-7.)

## DISCUSSION

JAD now moves to dismiss Atkins' Complaint, arguing that the court lacks subject matter jurisdiction over her claim. Specifically, JAD asserts that because it has never employed fifteen or more persons, the mandates of Title VII do not apply to its business. *See* 42 U.S.C. § 2000e(b). (Mot. to Dismiss ¶¶ 5-6.) Atkins responds by arguing that under the "integrated enterprise theory" discussed in *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582 (7th Cir. 1993), the interrelation between two nominally separate business entities may permit a court to consider them as a single entity, thereby aggregating their number of employees for Title VII purposes. Under the "integrated enterprise theory," which has its origins in cases involving federal labor laws, courts consider four factors in determining whether the separate entities constitute a single employer: (1) interrelation of operations; (2) common management, directors and boards; (3) centralized control of labor relations and

personnel; and (4) common ownership and financial control. *See id.* Atkins urges the court to consider JAD, and its affiliates, Smith Hosiery - S.E., Inc., and Smith Hosiery - N.E., Inc. as a single entity employing more than fifteen persons.

As JAD correctly points out, however, in *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Cir. 1999), the Seventh Circuit explicitly rejected application of the "integration test" to discrimination claims. Expressly concerned about the standard used to determine whether a "nominal employer" is part of an "integrated enterprise," the Seventh Circuit carefully examined the issue, beginning its discussion by noting the purpose of the Title VII exemption for small employers: "to spare very small firms from the potentially crushing expense of mastering the intricacies of antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *See id.* The court then identified three situations in which "the policy behind the exemption of the tiny employer is vitiated by the presence of an affiliated corporation." *See id.* In the Seventh Circuit's view, only these situations should override the exemption for small employers: (1) where traditional conditions for piercing the corporate veil exist - e.g., the employer has neglected corporate formalities and misled creditors; (2) where the employer is part of an enterprise which splits itself up into a number of corporations for the express purpose of avoiding liability under federal discrimination laws; or (3) where an affiliate of the employer commands the employer to violate the rights of its employees. *See id.* at 940-41.

Considering the evidence presented by both parties, the court now determines whether any of the three situations identified in *Papa* exist here, so as to confer this court

with subject matter jurisdiction over Atkins' claim.

### 1. Piercing the Corporate Veil

First, Atkins has not shown that any of the traditional conditions justifying piercing the corporate veil existed here. The court notes that the Seventh Circuit in *Papa* was unclear about whether courts should apply a federal common law standard for piercing the corporate veil or whether courts should look to the law of the state of incorporation. *See Papa*, 166 F.3d at 943 (appearing to articulate a federal common law standard, but citing to cases applying various state law standards). This court need not attempt to determine the Seventh Circuit's intent here, however, because Atkins has not produced evidence sufficient to justify piercing the veil under federal common law or Texas law. Under federal common law standards, a court may disregard corporate formalities when a corporation uses its affiliate to perpetrate a fraud or evade legal obligations, or where the two corporations act interchangeably, failing to maintain separate identities. *See e.g., Bufco Corp. v. N.L.R.B.*, 147 F.3d 964, 969 (Fed. Cir. 1998); *Chan v. Society Expeditions, Inc.*, 12 F.3d 1287, 1294 (9th Cir. 1997). Generally, the corporate fiction may be ignored not because "the corporate group is integrated," but because "it has neglected forms intended to protect creditors from being confused about whom they can look to for the payment of their claims." *See Papa*, 166 F.3d at 943 (citations omitted). Similarly, the Texas Supreme Court has held that "[t]he purpose in disregarding the corporate fiction is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice[.]" *See Sims v. Western Waste Indus.*, 918 S.W.2d 682, 684 (Tex. Ct. App. 1996) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.

1986)) (internal quotations omitted). Under Texas law, the corporate shield may be pierced when a corporate entity operates its affiliates in a "manner indistinguishable" from itself and "in a manner calculated to mislead those dealing with [it] to [its] detriment." *See id.*

In support of her assertion that JAD's employees should be aggregated with the other "On the Go" distributors, Atkins offered the testimony of Julia Bright ("Bright"), a former employee of Smith Hosiery - N.E. (Bright Aff. ¶ 2.) Bright characterized JAD as a "dummy corporation." (Tr. 7.) Her opinion is based on the fact that as an office manager for Smith Hosiery - N.E., she processed JAD's orders for "On the Go" supplies from Smith Hosiery - N.E. (Tr. 8-10.) In other words, the Maryland corporation "owned this product and therefore JAD owed us for it. It came out of our inventory." (Bright Aff. ¶ 14.) Bright also based her opinion on the fact that she occasionally received payments from clients for product sold by JAD. (Bright Aff. ¶ 11.) In further support of her claim, Atkins also offered corporate documents and business cards displaying the "On the Go!" hosiery logo, and referring to the separate corporate entities as "distribution centers." (Pl.'s Exs. 1-9.)

Unfortunately for Plaintiff, Bright's testimony and the documentary evidence establish nothing other than the fact that the entities were interrelated in that they all sold and marketed the same product, shared a corporate logo, shared directors and officers, and conducted some inter-office business. Simply put, Atkins did not meet her burden of showing that the affiliates were indistinguishable, or that they operated in a manner designed to mislead creditors. With respect to the interrelation between the various entities, Atkins has not shown that JAD ignored corporate formalities; indeed Bright's testimony tends to

establish the contrary. For example, when JAD did purchase its inventory through one of its affiliates, the affiliate charged JAD for the product and for shipping costs. (Tr. 15.) Further, when Smith Hosiery - N.E. received payment for a client's purchase of a JAD product, the payment was forwarded to JAD pursuant to a billing method that ensured that each entity received only those monies directly attributable to that particular entity's sales. (Bright Aff. ¶ 11.) Moreover, Bright testified that the entities maintained separate accounting records and distinct vendor numbers for billing purposes. (Tr. 19-20.) JAD also produced evidence that it maintained its own checking account, from which funds were withdrawn to pay personnel and creditors directly (Def.'s Exs. 1-2, 6-7), procured various forms of insurance coverage in its own name (Def.'s Exs. 3-4), and purchased a business vehicle in its own name. (Def.'s Ex. 5.)

Neither has Atkins established that JAD misled its creditors. In her affidavit, Bright claims that "[n]o client was ever aware that JAD Hosiery, Inc. exists." (Bright Aff. ¶ 10.) Besides not being based on personal knowledge, this assertion is not relevant to the issue of creditor confusion. The doctrine of veil piercing is intended to protect creditors, not customer-debtors, from being confused about which entity the creditor may pursue for outstanding claims. *See Papa*, 166 F.3d at 943. JAD maintains that it has always held itself out and operated as an entity independent from its affiliates. In support, JAD introduced its bank statements from October and November of 1996, along with copies of canceled checks made payable to several creditors, including Bossong Hosiery Mills, RL Carriers, Paychex and the State of Michigan. (Def.'s Exs. 1-2.) This evidence demonstrates that JAD not only

7

maintained its own checking account bearing JAD's corporate address and phone number, but also that it paid its own debts from that account. Indeed, F. Huntley Bossong, treasurer of Bossong Hosiery Mills, Inc., the manufacturer and supplier of "On the Go" brand hosiery, testified that Bossong has always viewed JAD as a distinct entity liable for its own debts. (Bossong Aff. ¶ 7.) For this reason, Bossong maintains credit insurance for JAD accounts that is separate from the credit insurance maintained by Bossong on the other affiliate accounts. (Bossong Aff., Exs. B-C.) Further, JAD submitted copies of invoices from Bossong billing JAD for product it ordered and paid for directly. (Bossong Aff., Ex. A.) Atkins has failed to establish that JAD's creditors were ever intentionally misled or confused about JAD's existence as a corporate entity. As such, the court concludes there is no basis for piercing the corporate veil, and therefore declines to aggregate the number of employees of the various affiliates on this basis.

### 2. Incorporating to Escape Liability

Second, Atkins presented no evidence that JAD was incorporated for the express purpose of eluding liability under federal anti-discrimination laws. To the contrary, the evidence shows that each of the entities was formed independently, at different times (well prior to Plaintiff's employment), and for the purpose of distributing "On the Go" brand hosiery in different regions of the United States. (Tr. 50-55.)

### 3. Affiliate Direction of Discriminatory Act

Finally, Atkins has also failed to show that any entity other than JAD directed the allegedly discriminatory act - e.g., firing Atkins because she was pregnant. Atkins'

termination memo was printed on JAD stationary and was signed by Mitch Smith and Ron Abramson, officers of JAD. Anthony Smith testified that all JAD officers, including himself, were involved in the decision to terminate Atkins. (Tr. 86.) The fact that the affiliates shared common directors and officers does not itself establish that the other entities directed JAD to act in a discriminatory manner. In *Papa*, for example, the parent corporation, which shared common members with the board its subsidiary, purportedly caused the plaintiff's firing by ordering its subsidiary to downsize. 166 F.3d at 942. Nevertheless, there was no suggestion that the parent was responsible for its subsidiary's selecting the plaintiff in particular for layoff or that the parent was responsible for its subsidiary having picked on him for a forbidden reason. *See id.* Under these circumstances, the Seventh Circuit refused to consider the number of persons employed by the parent as relevant to its Title VII jurisdictional analysis.

## CONCLUSION

JAD is not an "employer" under Title VII as it has not employed the requisite number of persons. Accordingly, JAD's motion to dismiss (Doc. 10-1) is granted.

ENTER:

Dated: July 14, 2000

REBECCA R. PALLMEYER
United States District Judge